**AETNA CASUALTY AND SURETY COMPANY, a body corporate, Appellant,**

v.

**Ralph N. SMITH, Appellee.**

No. 1862.

Municipal Court of Appeals for the District of Columbia.

Argued Oct. 1, 1956.

Decided Dec. 17, 1956.

2. 88 U.S.App.D.C. 386, 190 F.2d 612, 618.

Ward B. McCarthy, Washington, D. C., with whom Thomas B. Heffelfinger, W. Cameron Burton and John A. Kendrick, Washington, D. C., were on the brief, for appellant.

David F. Smith, Washington, D. C., for appellee.

Before ROVER, Chief Judge, and HOOD and QUINN, Associate Judges.

HOOD, Associate Judge.

Appellee Smith, the proprietor of a used car business, filed suit on an insurance policy issued by Aetna seeking indemnification for the loss of a 1949 Hudson automobile. Aetna filed an answer disclaiming liability on the ground that the loss was not covered by the terms of the policy, and filed a third-party complaint against one Allen who, according to Smith, had stolen the vehicle, requesting judgment over against him in the event there was a finding of liability.

At trial it was undisputed that Allen had actually taken the vehicle from Smith's lot. To avoid liability Aetna attempted to establish an employer-employee relationship between Smith and Allen under which Allen had the authority to remove the vehicle from the lot for the purpose of effecting its sale.[1] An attempt was also made by Aetna to show that a bona fide sale was made by Allen, on behalf of Smith, to a serviceman who absconded with the car after giving Allen a deposit of $125. The trial court rejected both of these factual theories, and accepted Smith's testimony that Allen was never employed as a salesman,[2] was never given authority to take any car from the lot, and removed the Hudson automobile not for the purpose of selling it on behalf of Smith, but rather with felonious intent. A judgment of $320 was entered for Smith and a similar judgment was entered for Aetna against third-party defendant Allen. Aetna appeals.

At the outset we are confronted with Smith's motion to dismiss the appeal. He argues that by pursuing its third-party complaint against Allen to judgment, Aetna has waived whatever right it had to appeal the primary judgment. Apparently the contention is that Aetna has ratified the judgment against it by using that judgment as the basis for its judgment against the third-party defendant.

Although numerous cases are cited stating the generally recognized principle that one who accepts benefits under a judgment is estopped from prosecuting an appeal therefrom, no case has been cited to us which holds that the mere filing of a third-party complaint and the recovery of judgment against the third-party defendant precludes the third-party plaintiff from appealing the judgment against it in favor of the plaintiff. Such a holding, we think, would detract from the benefits intended to flow from third-party practice, and would be an unwarranted restriction of a party's right to appellate review. Perhaps a showing that Aetna attempted execution on the third-party judgment would require a different conclusion,[3] but on the facts presented to us, we must hold that the appeal is authorized.

Aetna contends that the judgment against it should be reversed because (1) Smith did not introduce documentary evidence of title to the automobile, (2) he failed to present documentary evidence showing the amount of money invested in the automo-

1. The insurance policy contained the following provision:

"The policy does not apply: * * *

"(d) Under any Coverage—to loss resulting from either the Insured voluntarily parting with title and possession of any automobile if induced so to do by any fraudulent scheme, trick, device, false pretense, or from Embezzlement, Conversion, Secretion, Theft, Larceny, Robbery or Pilferage committed by any person including any employee, entrusted by the Insured with either custody or possession of the automobile."

2. Smith did testify however that he had given Allen permission to take a 1949 Dodge from the location of another car agency which he, Smith, owned, after Allen had approached him and told him that he had someone interested in purchasing it.

3. Cf. Flag Oil Corporation of Delaware v. Triplett, 180 Okl. 154, 68 P.2d 108.

bile, and (3) by his acts he ratified the transaction between Allen and the serviceman and could not thereafter claim a loss within the terms of the insurance policy.

### 1. Title to the Automobile.

 Aetna argues that it was incumbent on Smith to offer in evidence the motor vehicle's title certificate to satisfy the burden of proving it was a 1949 model. The contention seems to be that since there was some evidence tending to show that the Hudson was a 1947 model with a 1948 engine, the nonproduction of the certificate of title by Smith raised a presumption that if it had been produced it would have shown that the car was a 1947 Hudson rather than a 1949 Hudson as alleged in the complaint. Assuming there was sufficient foundation for an unfavorable inference of this kind,[4] the fact that the trial court failed to draw the inference constitutes no error reviewable on appeal. The inference arising from the refusal or unexplained failure to produce relevant documentary evidence is permissive in nature, and is merely another factor which may be given consideration by the trier of the facts when weighing the evidence and determining the credibility of witnesses.[5] We think there was sufficient evidence for the trial court to hold that appellee was title owner of a 1949 Hudson automobile and that that automobile was the one taken from the used car lot.

### 2. Documentary Evidence of the Money Invested in the Automobile.

Under the terms of the policy Aetna's liability extended only to the actual amount invested in the car by the insured; specifically excluded from coverage were the in-sured's "prospective profit" and "overhead charges of any nature." When Smith tried to establish the fair market value of the stolen car, an objection was sustained on the ground that the market value would not be the measure of damages, because such value included profit and overhead charges. Smith then testified that he had an actual investment of about $400 in the stolen car including the amount expended for repairs, paint, etc. On cross-examination appellee was asked whether he had any records to substantiate his claim of a $400 investment in the car. He answered "Yes," but in response to another question stated that he did not have the records with him; that another witness would testify to the repair work performed on the car.

 Aetna contends that the failure to introduce the records gave rise to a conclusive presumption "that had the plaintiff's records been produced they would not have supported his contentions as to the amount of money he claimed he had in the automobile." This contention is identical to that raised under the point previously discussed and may be disposed of in a similar manner. The trial court could have drawn an unfavorable inference, but it was not required to do so and apparently chose not to. Failure of the trier of the facts to draw an inference, permissible in nature, cannot be advanced to an appellate court as a ground justifying reversal of the judgment.

### 3. Ratification of the Transaction between Allen and the Serviceman.

 Smith accepted $125 from Allen's wife, allegedly the amount paid by the serviceman to Allen as down payment on the Hudson. Aetna contends that by so doing

---

4. No unfavorable inference arises where the documentary evidence is equally available to both parties, when there is no actual suppression or withholding, or where the failure to produce is properly accounted for. See 31 C.J.S., Evidence, § 156(b).

5. See Washington Gas Light Co. v. Bian-caniello, 87 U.S.App.D.C. 164, 183 F.2d 982 (nonproduction "permits" an unfavorable inference to be drawn); Hartman v. Lubar, D.C.Mun.App., 49 A.2d 553 (jury "could" infer contents unfavorable because not produced). See also discussion 31 C.J.S., Evidence, § 156(a), "Force of Presumption."

Smith ratified the sale between Allen and the serviceman, and is now estopped to contend there was a theft of the car for which recovery is allowable. The trial court found that acceptance of the $125 by appellee did not constitute a ratification of the transactions of Allen, but that the money was given and received partly as payment for damage to an Oldsmobile and Buick which Allen had taken from the same lot, and partly "on account of the restitution for the Hudson." [6] We think the finding had substantial supporting evidence, and the judgment must be affirmed.

Affirmed.

6. The court found that damage to the Oldsmobile and Buick amounted to $100. The additional $25 given to appellee by the Allens was applied to Aetna's liability under the insurance policy which the court found to be $345. This resulted in the judgment of $320.